J. E. Thomas and W. A. Thomas, Husband and Wife v. Commissioner.
Thomas v. Commissioner
Docket No. 3840.
United States Tax Court
1945 Tax Ct. Memo LEXIS 350; 4 T.C.M. (CCH) 27; T.C.M. (RIA) 45010; January 11, 1945
W. V. Birchfield, Esq., for the petitioners. E. M. Woolf, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: The Commissioner determined a deficiency of $222.03 in income tax for the year 1941, disallowing for lack of substantiation a deduction of $1,763.24 claimed for loss on endorsements. At trial the petitioner modified his claimed deduction to one for a loss under section 23 (e) of the Internal Revenue Code. Findings of Fact Petitioners, husband and wife, reside in Marion, Virginia, and filed a joint income tax return for the year 1941. The issue relates to a claimed deduction from the income of J. E. Thomas, hereinafter *351 referred to as petitioner. For about 30 years petitioner represented the Texas Oil Company in Marion, Virginia, as a wholesale dealer in gas and oil. Some years prior to 1941 petitioner retired from the active management of his business and employed his sons to run it for him. He paid one of his sons, C. W. Thomas, $3,000 to $3,600 a year to manage the business. In 1938 the Texas Company requested petitioner to carry on an automobile tire business along with the gas and oil business and to make a contract therefor with the Firestone Tire Company. Petitioner did not wish to do this since he had been in the tire business with bad results in 1920 and was convinced that he could not make money with that line. However, C. W. Thomas thought it would be profitable and was anxious to take on the tire business. After some negotiation C. W. Thomas, in the latter part of 1938, entered into an agreement with the Firestone Tire Company for the sale of automobile tires and accessories. The tire business was conducted from the same plant as the oil business but was run as a separate entity. Petitioner was the owner of the gas and oil business which was operated under the name of J. E. Thomas, whereas *352 his son owned the tire business and operated it under the name of Thomas Oil Company. All profits from the tire business were to go to C. W. Thomas but petitioner orally agreed with his son that he would bear any loss arising from the business. Petitioner's motives in entering into this sort of an agreement were twofold: (1) his son thought the business would be profitable and was anxious to go into it, and (2) petitioner knew that the Texas Company wanted him to carry the tire line, although he would not go into the business himself, he did want to protect his oil and gas contract which could be terminated by the company on short notice. The tire business was operated from 1938 until 1941. Petitioner was unable to say whether the business had operated at a profit or loss at any one time until it was finally terminated. His explanation of this was that the system of discounts depending on the number of tires sold was such that he could not tell from the books at any one time whether they showed a profit or loss. At some time in 1941 petitioner's plant was broken into and property belonging to the oil and gas business was stolen. Petitioner could not say whether there were any thefts *353 from the tire business. It was when the Firestone Tire Company began to press for payment of its bill in 1941 that petitioner visited the room in the plant used for the tire business, looked over the stock on hand and told his son that it looked to him as though there was not enough there to pay the Tire Company and "I think you had better quit. I believe you have lost a lot of money here. I believe you had better quit." Petitioner induced the Tire Company to repurchase the stock on hand and after credit was given for that stock it was determined that Thomas Oil Company owed the Firestone Tire Company the amount of $1,763.24. Petitioner did not know why there were insufficient funds to pay this debt when the business was terminated. It is solely on the basis of this outstanding debt that he asserts there was a loss. This amount was borrowed from the Marion National Bank on a note dated April 22, 1941, signed Thomas Oil Company by C. W. Thomas and endorsed by the petitioner. The proceeds were used by C. W. Thomas to pay his indebtedness to the Firestone Tire Company. The bank never requested C. W. Thomas to pay the note. On October 21, 1941, the petitioner voluntarily made a payment *354 on the note in the amount of $1,000, and on October 21, 1942, he made a further voluntary payment of $709.99. An amount of $53.25 was paid on the note by his son. Opinion The question is whether petitioner sustained a deductible loss under the provisions of section 23 (e) (1) or (2) of the Internal Revenue Code. [1] Petitioner endorsed and paid a note of his son, the funds of which were used to pay a business debt of the son, the losses of which business petitioner had agreed to bear. We assume for the sake of argument but do not decide that the fact that one of petitioner's motives in undertaking this obligation was to protect his oil and gas contract is sufficient to make this a transaction entered into for profit. Petitioner's *355 sole argument is based on the assertion that his son's tire business sustained a loss and that he was under contract to pay such loss. No claim is made that petitioner is entitled to a deduction solely on the basis of his having sustained a loss by reason of his having endorsed and paid the note which his son made in securing the bank loan. His counsel admitted in his opening statement that there was no claim on that ground "because it was ascertained that the maker of the note had property and it could have been collected." Petitioner, however, has failed to bear the burden of proving that any loss was sustained by his son's tire business. No records or accounts of the business were put in evidence. His son did not appear to testify in the case. Petitioner admitted that the accounts were such that he never could tell whether the business was operated at a profit or loss. All we know is that at the termination of the business a debt was owed to the Firestone Tire Company and from this petitioner assumes there was a loss. Although the plant had been broken into and losses to the oil business were noted petitioner could not say that anything had been stolen from the tire business. *356 Petitioner did not know why there were insufficient funds to pay the debt to the supplier when the business was terminated. He testified: "* * * I don't know whether it was caused by faulty bookkeeping, caused by break-ins, or what it was." In any event no evidence was presented as to what earnings or other money were withdrawn by C. W. Thomas, the owner of the business, nor was there evidence that he made no withdrawals. With this state of the record it would be mere speculation to find that the debt owed to the Firestone Tire Company represented a loss. Petitioner's agreement with his son only required him to pay actual losses of the tire business. If the business terminated without loss petitioner had no obligation to pay any debts of the business and any such payment was a gift to his son. Voluntary payment of the obligations of another does not result in a deductible loss. A. Giurlani & Bro., Inc. v. Commissioner, 119 Fed. (2d) 852; W. F. Young, Inc. v. Commissioner, 120 Fed. (2d) 159. Decision will be entered for respondent. Footnotes
1. Sec. 23. Deductions from Gross Income. In computing net income there shall be allowed as deductions: * * * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business;↩